IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

BEAUMONT DIVISION

| | | |
|---|---|---|
| ALTO V. WATSON, III | § | |
| VS. | § | CIVIL ACTION NO.   1:16-CV-458 |
| JERRY JOHNSON | § | |

<u>MEMORANDUM OPINION</u>

Petitioner Alto V. Watson, III, proceeding *pro se*, filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

<u>Factual Background</u>

Petitioner filed this petition challenging his conviction in the 252nd District Court of Jefferson County, Texas in cause number 12-14962. On April 1, 2013, petitioner pleaded guilty to theft pursuant to a plea agreement and was later sentenced to five years of deferred adjudication community supervision. The Ninth Court of Appeals summarized the facts surrounding the plea and sentence as follows:

> In 2012, Watson was indicted in four separate cases for felony theft. In early April 2013, Watson reached a plea agreement with the State in cause number 12-14962. Watson's plea agreement had several material conditions, including a requirement that the court would place Watson on probation in cause number 12-14962, a requirement that the theft charges against Watson in cause numbers 12-14963, 12-14964, and 12-15663 be dismissed, a requirement that Watson pay "up front" restitution to the individuals who were the victims of his four alleged thefts, and a requirement that Watson resign his license to practice law. While the terms of Watson's plea bargain were subject to Judge [Layne] Walker's approval, several details of the bargain, such as the exact conditions the trial court would impose on Watson through the community supervision order, were left to Judge Walker's discretion.
>
> Shortly after Watson entered into his plea agreement with the State, Judge Walker conducted a hearing to decide whether he would approve the proposed

bargain, which required three of the cases of theft to be dismissed. During the hearing, Watson stated that he was guilty of the charges that were alleged by the indictment in cause number 12-14962, that his plea was made freely and voluntarily, and that he had read, understood, and signed the written plea admonishments that related to his plea. Watson advised Judge Walker that he understood he would be required to resign his license to practice law as a condition of the agreement, but the record indicates the resignation was to occur after Watson had paid restitution to the various individuals identified in the four indictments as the persons from whom he had allegedly stolen money. Near the end of the plea hearing, Watson requested that Judge Walker approve the agreement. In response, Judge Walker pronounced that the plea agreement was acceptable to the court, and he advised Watson that he would determine at a later date the period Watson would be required to be on probation. Judge Walker did not comment on what other conditions he might decide to impose on Watson when rendering the community supervision order in cause number 12-14962; nonetheless, under Watson's agreement with the State, these details were left to Judge Walker's discretion. When the hearing concluded, Judge Walker stated: "I will see you back here on sentencing day."

In late May 2013, before the sentencing hearing occurred, Judge Walker learned that Watson had been arrested for allegedly burglarizing a habitation. In June 2013, the grand jury indicted Watson for entering a habitation owned by A.A., without her effective consent, with the intent to commit assault. Judge Walker allegedly contacted A.A. and her fiancé, BB., witnesses to the burglary, the day after the alleged burglary occurred. According to Watson, he was unaware of Judge Walker's contact with A.A. and B.B. when Judge Walker presided over several hearings that occurred after the date of the alleged burglary. Judge Walker's decision to contact A.A. and B.B., and Judge Walker's failure to disclose this information to Watson, serve as the factual background for Watson's complaints that Judge Walker should not have presided over any of his criminal cases.

Watson's sentencing hearing in cause number 12-14962 occurred in August 2013. Near the beginning of the sentencing hearing, Judge Walker was advised that Watson had not paid the restitution amount required by his plea agreement. Judge Walker was also advised that Watson, as of the hearing, had also not resigned his license to practice law. Even though Watson had not fully complied with the requirements of his written plea agreement, Judge Walker honored the agreement, and placed Watson on community supervision for five years. Under the community supervision order in cause number 12-14962, Judge Walker ordered that Watson pay restitution in the amount of $29,320 to the victims of his four alleged thefts, and he ordered that Watson serve 180 days in jail, with the term to begin ninety days after the date of the sentencing hearing.

> In his brief, Watson argues that the up-front sentence constituted an upward departure from his plea agreement. However, during the sentencing hearing, Watson did not complain that the up-front sentence was a condition that did not comply with the terms of his written plea agreement, that the up-front sentence rendered his guilty plea involuntary, or request that he be allowed to withdraw his plea. During the hearing, Judge Walker explained why he had decided to impose an up-front sentence under the circumstances presented in Watson's case, explaining than an up-front jail sentence was required because Watson had "stole[n] money from [his] clients." Several days after the sentencing hearing, Judge Walker dismissed cause numbers 12-14963, 12-14964, and 12-15663, honoring the terms of Watson's plea agreement with the State.
>
> In November 2013, Judge Walker held a hearing to enforce the community supervision order's up-front jail condition. Following the hearing, Watson was taken into custody; however, two days later, Judge Walker allowed Watson to post a $500 bond; after posting bond, Watson was released from jail. During the November hearing, Judge Walker dismissed cause number 13-17023, the case that concerned the alleged burglary of A.A.'s home, which was not an agreed requirement based on Watson's plea agreement with the State in cause number 12-14962.

*Ex parte Watson*, No. 09-15-00333-CR, 2016 WL 908258, at *2-4 (Tex.App.–Beaumont Sept. 14, 2016, pet. ref'd).

Petitioner filed a state application for writ of habeas corpus pursuant to Article 11.072 of the Texas Code of Criminal Procedure. The trial court, with a new judge presiding over the habeas proceeding, denied relief. On September 14, 2016, the Ninth Court of Appeals affirmed the judgment.

## The Petition

Petitioner raises three grounds for review. First, petitioner contends the trial judge should have recused himself or been disqualified from presiding over petitioner's criminal case because the judge initiated *ex parte* contact with the victims of a different crime that took place after petitioner pleaded guilty. Petitioner contends his guilty plea was involuntary because he was unaware of the

*ex parte* contact when he pleaded guilty. Finally, petitioner alleges he was deprived an evidentiary hearing and discovery in the state court habeas proceedings.

## Standard of Review

Title 28 U.S.C. § 2254 authorizes the District Court to entertain a petition for writ of habeas corpus on behalf of a person in custody pursuant to a state court judgment if the prisoner is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). The Court may not grant relief on any claim that was adjudicated in state court proceedings unless the adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States;[1] or (2) resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented in the state court. 28 U.S.C. § 2254(d). A decision is contrary to clearly established federal law if the state court reaches a conclusion opposite to a decision reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). An application of clearly established federal law is unreasonable if the state court identifies the correct governing legal principle, but unreasonably applies that principle to the facts. *Id*. State court decisions must be given the benefit of the doubt. *Renico v. Lett*, 559 U.S. 766, 773 (2010).

The question for federal review is not whether the state court decision was incorrect, but whether it was unreasonable, which is a substantially higher threshold. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). Federal courts look to the "last reasoned opinion" as the state court's

---

[1] In making this determination, federal courts may consider only the record before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

"decision." *Salts v. Epps*, 676 F.3d 468, 479 (5th Cir. 2012). If a higher state court offered different grounds for its ruling than a lower court, then only the higher court's decision is reviewed. *Id.* "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Harrington v. Richter*, 526 U.S. 86, 98 (2011); *see also Johnson v. Williams*, _ U.S. _ , 133 S. Ct. 1088, 1091 (2013) (holding there is a rebuttable presumption that the federal claim was adjudicated on the merits when the state court addresses some claims, but not others, in its opinion).

This Court must accept as correct any factual determinations made by the state courts unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e). The presumption of correctness applies to both implicit and explicit factual findings. *Young v. Dretke*, 356 F.3d 616, 629 (5th Cir. 2004); *Valdez v. Cockrell*, 274 F.3d 941, 948 n. 11 (5th Cir. 2001) ("The presumption of correctness not only applies to explicit findings of fact, but it also applies to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact."). Deference to the factual findings of a state court is not dependent upon the quality of the state court's evidentiary hearing. *See Valdez*, 274 F.3d at 951 (holding that "a full and fair hearing is not a precondition to according § 2254(e)(1)'s presumption of correctness to state habeas court findings of fact nor to applying § 2254(d)'s standards of review.").

Analysis

*Involuntary Guilty Plea*

Petitioner contends his guilty plea was rendered involuntary as a result of the trial judge's *ex parte* communications with victims of an alleged crime.

A guilty plea must be made knowingly, voluntarily, and intelligently to be constitutionally valid. *United States v. Washington*, 480 F.3d 309, 315 (5th Cir. 2007). When determining whether a plea is voluntary, the court considers all relevant circumstances, including whether the defendant: (1) had notice of the charges against him; (2) understood the constitutional protections he was waiving; and (3) had access to competent counsel. *Id*. Declarations of voluntariness made under oath in open court carry a strong presumption of truth, forming a "formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977).

During the state habeas proceedings, the trial court found that petitioner's guilty plea was a voluntary, knowing, and intelligent act. State Court Habeas Record, Docket Entry #2-2 at 21-22. The trial court found that the *ex parte* communications did not affect petitioner's guilty plea because they took place after petitioner and his counsel negotiated a plea agreement with the State and after petitioner had entered his guilty plea. *Id*. at 22. Thus, the trial court found that petitioner was not entitled to habeas relief on the ground that his guilty plea was involuntary. *Id*. This finding was affirmed on appeal. The Ninth Court of Appeals explained its reasoning as follows: "Given the lack of a temporal relationship between the plea-bargain agreement and the hearing on Watson's plea, Judge [Raquel] West finding the extrajudicial contact could not have affected the voluntariness of Watson's plea is reasonable and finds sufficient support in the evidence in the record. . . ." *Ex parte Watson*, 2016 WL 908258, at *6.

The record conclusively shows that the *ex parte* communications took place after petitioner pleaded guilty, and, thus, had no bearing on his guilty plea. Therefore, the state courts' conclusion that petitioner's guilty plea was voluntary is not contrary to, and does not involve an unreasonable application of, clearly established federal law. Nor is the decision based on an unreasonable

determination of the facts in light of the evidence. Petitioner is not entitled to federal habeas relief on this ground.

*Failure to Recuse*

Petitioner argues that the trial judge should have recused himself or he should have been disqualified from hearing further proceedings in petitioner's criminal case because of his *ex parte* communications with victims of another alleged crime involving petitioner.

Petitioner raised this issue in his state habeas application, which was reviewed by the new presiding judge of the 252nd District Court, Judge Raquel West. The judge found that the communications were not *ex parte* because the burglary offense had not been indicted or filed in the 252nd District Court when the communications were made. SCHR, #2-2 at 24-25. The judge made a factual finding that Judge Walker did not consider any information regarding the burglary in determining the appropriate conditions of petitioner's community supervision at the sentencing hearing on August 5, 2013. SCHR, #2-2 at 26. The judge concluded that the evidence did not establish an appearance of bias or prejudice such that Judge's Walker's impartiality might reasonably be questioned. SCHR, #2-2 at 27. The judge also found that the credible evidence did not show that Judge Walker was unable to render a fair judgment in petitioner's theft case. SCHR, #2-2 at 27.

On appeal, the Ninth Court of Appeals found that Judge West did not abuse her discretion by finding that petitioner had not met his burden of proving that Judge Walker was biased or prejudiced against him, such that recusal or disqualification was required. *Ex parte Watson*, 2016 WL 908258, at *8-9. The Court explained its reasoning as follows:

> Judge West was required to look at Watson's claims objectively from the standpoint of a well-informed observer. From that standpoint, she might have reasonably viewed the conditions that Judge Walker imposed on Watson in the

7

community supervision order as lenient, given that his bargain resulted in the dismissal of three other cases of theft and that in them, he was a lawyer indicted for having stolen money from his clients. Judge West was also entitled to consider the fact that Judge Walker never actually required that Watson serve any significant part of the up-front jail sentence; instead, Judge Walker let Watson out on bond after he served two days of that sentence.

The manner Judge Walker handled the sentencing hearing also undercuts Watson's claim that Judge Walker considered the burglary charge during sentencing. The transcript of the sentencing hearing reflects that no evidence regarding the burglary was ever introduced, and that Judge Walker never mentioned the burglary in the hearing except to indicate that matters regarding Watson's other cases were not relevant to the hearing that day, which concerned Watson's sentence for theft. Additionally, during the sentencing hearing, Watson's attorney expressed no surprise when Judge Walker indicated that an up-front condition in jail would be included as part of Watson's community supervision obligations, and he never objected during the sentencing hearing that any of the requirements of the community supervision order were inconsistent with the terms of the agreement that Watson made with the State. In summary, in evaluating Watson's claim of bias, Judge West could reasonably consider that the terms Judge Walker imposed on Watson through the community supervision order do not reflect an attitude or state of mind so resistant to dispassionate inquiry that reasonable people, knowing of the significant benefits Watson gained for his plea, would question Judge Walker's objectivity with respect to the manner he conducted the sentencing hearing in cause number 12-14962.

Courts presume that judges understand that they have a duty to "render decisions upon a proper record and to disregard" extraneous matters. Therefore, the party moving to recuse a judge must provide facts that demonstrate the presence of a bias or partiality "of such a nature and extent as to deny the movant due process of law." Watson was required to show that Judge Walker held an antagonism against him to such a degree that it was impossible for Judge Walker to have rendered a fair judgment. Watson's evidence, even when we consider the evidence that Judge West indicated she would not consider, does not show that Judge Walker had an antagonism against Watson, much less an antagonism indicating that Judge Walker could not render a fair judgment. Instead, the sentencing hearing supports Judge West's conclusion that Judge Walker's decision to impose an up-front sentence as one of the conditions of the community supervision order was unrelated to any matter related to the burglary, and reflects that Watson's up-front sentence relates to the fact that he had not complied with his agreement to pay up-front restitution and the fact that he was a lawyer who had stolen money from a client, matters unrelated to the alleged burglary.

>We are required to defer to Judge West's finding, on conflicting evidence, that Judge Walker did not consider facts regarding the burglary during any of the hearings in cause number 12-14962. The record shows that Watson was aware that an up-front jail sentence might be imposed at sentencing, as before pleading guilty, Watson acknowledged in writing that he was aware the trial court could order his confinement for a period of up to 180 days as a condition of the court's community supervision order. We conclude that the evidence supports Judge West's conclusion that Judge Walker did not consider any of the burglary facts during the August 2013 sentencing hearing. We further conclude that the record contains sufficient evidence to support Judge West's conclusion that Judge Walker was not disqualified, as the evidence does not demonstrate that he had served as Watson's lawyer, that he had an interest in the subject matter that was in controversy, or that he was related to Watson in the third degree, either by the rule of affinity or consanguinity. TEX. R. CIV. P. 18b(a). And, we conclude the evidence allowed Judge West to reasonably conclude that Judge Walker's impartiality could not reasonably be subject to question, that Judge Walker did not have a personal bias or prejudice concerning the cases or concerning Watson, and that Judge Walker did not have personal knowledge of a disputed evidentiary fact that concerned the proceedings in Watson's theft case, cause number 12-14962. *See* TEX. R. CIV. P. 18b(b)(1), (2), (3). We hold that Judge West did not abuse her discretion in finding that Judge Walker did not rely on the facts regarding the burglary during the sentencing hearing conducted in cause number 12-14962.

*Ex parte Watson*, 2016 WL 908258, at *8-9 (citations omitted).

Generally, the constitutional standard for judicial impartiality is narrower than the standards set by state and federal recusal statutes. *Richardson v. Quarterman*, 537 F.3d 466, 474 n. 4 (5th Cir. 2008). Due Process requires a fair trial before a judge with no actual bias or interest in the outcome of the case. *Id.* at 474. Because of the difficulty of proving actual bias, the Due Process Clause also requires recusal if the judge is presumptively biased. *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 883-84 (2009); *Richardson*, 537 F.3d at 475. "Presumptive bias occurs when a judge may not actually be biased, but has the appearance of bias such that 'the probability of actual bias...is too high to be constitutionally tolerable.'" *Richardson*, 537 F.3d at 475 (quoting *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)). The Supreme Court has found presumptive bias in three situations: (1) when the

9

judge has a substantial interest in the outcome of the case; (2) when the judge has been the target of personal abuse or criticism from a party; or (3) if the judge has the dual role of investigating and adjudicating the dispute. *Id*.

This Court must presume that the state court's factual determinations are correct unless petitioner rebuts that presumption with clear and convincing evidence. Petitioner has not shown by clear and convincing evidence that the communications regarding the burglary case affected Judge Walker's decisions in the theft case. Therefore, the state court's factual findings are presumed to be correct. Petitioner has not demonstrated that Judge Walker was actually biased or had an interest in the case. In addition, petitioner's argument for recusal does not fall within the three situations where bias is presumed. Under the highly deferential standard of review applicable to state court determinations, this court cannot conclude the state court's findings were contrary to, or involved an unreasonable application of, clearly established federal law. Nor was the decision based on an unreasonable determination of the facts in light of the evidence presented in the state court. Therefore, this ground for review lacks merit.

*Failure to Allow Evidentiary Hearing or Discovery*

Petitioner contends his rights were violated when he was denied an evidentiary hearing and discovery by the state courts. This issue was raised, and rejected, on direct appeal. The Ninth Court of Appeals found that petitioner was not entitled to an evidentiary hearing or discovery under state law. *Ex parte Watson*, 2016 WL 908358, at *10-11. A state court's interpretation of state law is not reviewable by a federal court *Wood v. Quarterman*, 508 F.3d 408, 414 (5th Cir. 2007); *Dickerson v. Guste*, 932 F.2d 1142, 1145 (5th Cir. 1991). Further, petitioner is not entitled to relief on this ground because "infirmities in state habeas proceedings do not constitute grounds for relief in federal

court." *Trevino v. Johnson*, 168 F.3d 173, 180 (5th Cir. 1999) (quoting *Hallmark v. Johnson*, 118 F.3d 1073, 1080 (5th Cir. 1997)).

## Certificate of Appealability

In this case, the petitioner is not entitled to the issuance of a certificate of appealability. An appeal from a judgment denying federal habeas corpus relief may not proceed unless a judge issues a certificate of appealability. *See* 28 U.S.C. § 2253; FED. R. APP. P. 22(b). The standard for granting a certificate of appealability, like that for granting a certificate of probable cause to appeal under prior law, requires the petitioner to make a substantial showing of the denial of a federal constitutional right. *See Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000); *Elizalde v. Dretke*, 362 F.3d 323, 328 (5th Cir. 2004); *see also Barefoot v. Estelle*, 463 U.S. 880, 893 (1982). In making that substantial showing, the petitioner need not establish that he should prevail on the merits. Rather, he must demonstrate that the issues are subject to debate among jurists of reason, that a court could resolve the issues in a different manner, or that the questions presented are worthy of encouragement to proceed further. *See Slack*, 529 U.S. at 483-84; *Avila v. Quarterman*, 560 F.3d 299, 304 (5th Cir. 2009). If the petition was denied on procedural grounds, the petitioner must show that jurists of reason would find it debatable: (1) whether the petition raises a valid claim of the denial of a constitutional right, and (2) whether the district court was correct in its procedural ruling. *Slack*, 529 U.S. at 484; *Elizalde*, 362 F.3d at 328. Any doubt regarding whether to grant a certificate of appealability is resolved in favor of the petitioner, and the severity of the penalty may be considered in making this determination. *See Miller v. Johnson*, 200 F.3d 274, 280-81 (5th Cir. 2000).

In this case, petitioner has not shown that any of the issues raised by his claims are subject to debate among jurists of reason, or that a procedural ruling was incorrect. In addition, the

questions presented are not worthy of encouragement to proceed further.  Petitioner has failed to make a sufficient showing to merit the issuance of a certificate of appealability.

## Conclusion

For the reasons set forth above, this petition for writ of habeas corpus will be denied.  A certificate of appealability will not be issued.  A final judgment will be entered in accordance with this memorandum opinion.

So **ORDERED** and **SIGNED** this **27** day of **July, 2017.**

_____
Ron Clark, United States District Judge